UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

COLLEGE PARK DETROIT
OWNER, LLC., a Delaware Limited
Liability Company,

    Plaintiff,

v.

PSYGENICS, INC.,
a Michigan Corporation,

    Defendant.

Case No.

Hon.

---

Matthew Mitchell (P69810)
Andrew M. Creal (P83806)
Maddin, Hauser, Roth & Heller, P.C.
Attorneys for Plaintiff
One Towne Square, Fifth Floor
248-827-1874
mmitchell@maddinhauser.com
acreal@maddinhauser.com

## COMPLAINT

Plaintiff COLLEGE PARK DETROIT OWNER, LLC ("College Park" or "Plaintiff") states as follows for its Complaint against Defendant PSYGENICS, INC. ("Psygenics" or "Defendant"):

### PARTIES, JURISDICTION, AND VENUE

1. College Park is a limited liability company organized under the laws of the State of Delaware. A limited liability company is a citizen of every state of which a member of the company is a citizen. *See* 28 U.S.C. § 1332; *Carden v.*

04093929 v2

*Arkoma Associates,* 494 U.S. 185, 195-96, 110 S. Ct. 1015, 1021 (1990); *Delay v. Rosenthal Collins Group, L.L.C.,* 585 F.3d 1003,1005 (6th Cir. 2009); *Trident-Allied Associates, L.L.C. v. Cypress Creek Associates, L.L.C.,* 317 F. Supp.2d 752, 752 (E.D. Mich. 2004). Plaintiff has three members. Two of its members are individuals domiciled in the State of New York. The third member is a limited liability company with a single individual member who also resides in New York. Therefore, College Park is deemed a citizen of New York, only, for purposes of diversity jurisdiction.

2. Psygenics is a corporation organized under the laws of the State of Michigan. A corporation is deemed a citizen of its state of incorporation and the state of its principal place of business. *Freeman v. Unisys Corp.*, 870 F. Supp. 169, 172 (E.D. Mich. 1994); 28 U.S.C. § 1332(c)(1). Upon information and belief, Psygenics also maintains its principal place of business in Michigan. Therefore, Defendant is deemed a citizen of Michigan, only, for purposes of diversity jurisdiction.

3. College Park seeks damages exceeding $75,000 and thus this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because there is complete diversity between the parties and the amount in controversy exceeds the sum or value of $75,000.

4. The Court also has general and specific personal jurisdiction against the Defendant, including because Psygenics is incorporated pursuant to the laws of the

State of Michigan and transacted business in Michigan with reference to the disputed matters set forth herein.

5. Venue also is proper pursuant to 28 U.S.C. § 1391(b), in that Defendant resides within this District and this District is a judicial district in which a substantial part of the events or omissions giving rise to the Plaintiff's claim occurred, and a substantial part of property that is the subject of the action is situated.

## GENERAL ALLEGATIONS

6. This case arises from a dispute between the parties concerning Psygenics' lease of real property owned by College Park and located at 7800 W. Outer Drive, Detroit, MI 48235 (the "Property").

7. More specifically, Psygenics leased Suite 300 of the Property to run its business pursuant to a written lease agreement dated March 9, 2018 with Plaintiff's predecessor, which the parties later ratified and amended via a second written lease agreement effective April of 2022 between Psygenics and College Park (**Exhibit A**, collectively, the "Property Lease").

8. Defendant also leased a smaller space at the Property from College Park for storage pursuant to a written lease agreement dated March of 2022. (**Exhibit B**, the "Storage Lease").

9. On November 14, 2023, due to no fault of College Park, a water loss occurred at the Property, causing damage to the suit Psygenics leased to operate its business.

10. As a result, College Park provided Psygenics with rent abatement and acted with reasonable dispatch to remediate, assess, and make required, sufficient, and reasonable repairs to the Property.

11. Despite this, in or about February of 2024, Psygenics became dissatisfied with the pace and scope of repairs, demanded additional repairs that College Park was under no obligation to make, including replacement of all flooring and carpeting within the space, and ultimately informed College Park that Psygenics would not return to the Property or otherwise meet its obligations under the Property Lease or Storage Lease.

12. Psygenics also expressed concern relating to the presence of asbestos flooring in the suite it leased and claimed the suite was not habitable following the water damage.

13. On March 22, 2024, at College Park's and/or its insurer's request, IAQ Management Services ("IAQ") conducted a comprehensive report on the habitability of Psygenics' space within the Property. (**Exhibit C**, IAQ Report).

14. IAQ observed that: "The reported loss history (including 'immediate' restorative response, including water extraction and application of an anti-microbial

agent to the carpet), inspection findings, and *all* test results are **not** consistent with (a) contamination requiring carpet removal, (b) floor tile delamination requiring asbestos abatement, or (c) mold contamination of any kind." (**Exhibit C**).

15. IAQ's report ultimately concluded that no further repairs or remediation in Psygenics' space were required to render the space safe for occupation.

16. Thus, on April 12, 2024, counsel for College Park sent a letter to Psygenics' counsel, providing IAQ's report and demanding that Psygenics re-occupy its suite by May 1, 2024 and resume rental payments. (**Exhibit D**, Demand Letter).

17. Despite that correspondence, Psygenics has refused to re-occupy its suite, has abandoned the Property, and has not made required payments pursuant to the Property Lease or the Storage Lease.

18. Therefore, Psygenics is in material breach of the Property Lease and Storage Lease, Psygenics' material breaches have caused College Park to suffer damages, and College Park is entitled to all remedies available to it under the parties' agreements and applicable law.

19. Psygenics has no justification for its actions under the terms of the parties' agreements or applicable law, and College Park has materially and substantially complied with its obligations under the contracts.

20. At all times, College Park acted in good faith, in a commercially reasonable manner, and consistent with the terms of the Property Lease and the Storage Lease.

21. For example, Section 9.01 of the Property Lease states that, in the event of damage to the Property, Landlord "shall cause the Project and/or Premises to be repaired and restored to good, tenantable condition with reasonable dispatch at its expense; provided, however, Landlord shall not be obligated to expend for such repair or restoration an amount in excess of the insurance proceeds made available to Landlord for such purpose, if any."

22. Section 9.01 of the Property Lease further provides that "Landlord's obligations hereunder shall be limited to repairing or restoring the Project and/or the Premises to substantially the same condition that existed prior to such damage or destruction."

23. Section 9.04 of the Property Lease continues, "If the casualty, or the repairing or rebuilding of the Premises pursuant to Sections 9.01 and 9.02 above shall render the Premises untenable, in whole or in part, a proportionate abatement of the rent due hereunder shall be allowed from the date when the damage occurred until the date the Landlord completes the repairs on the Premises."

24. As such, Psygenics was only entitled to—and was granted—rent abatement and had no right to abandon Suite 300 of the Property because it was

dissatisfied with the pace of repairs, which was reasonable in light of the extent of the damages, Psygenics' constant complaints, and the environmental issues in need of assessment and evaluation.

25. Both the Property Lease and the Storage Lease entitle Psygenics to recover all presently due and future amounts due under the leases (including CAM Balances, both past due and ongoing), attorney fees, litigation costs, and other damages. (Property Lease and Storage Lease, §§18.05, 18.06).

26. Section 28.01 of the Property Lease further requires Defendant to indemnify and hold College Park harmless against all losses, to-wit:

"28.01. Tenant, its successors and assigns shall indemnify and hold harmless Landlord and all superior lessors or superior mortgagees and its and their respective partners, directors, officers, agents and employees from and against any and all third-party claims arising from or in connection with: (i) the conduct or management of the Premises or of any business therein, or any work or thing whatsoever done, or any condition created (even if due to Landlord's negligence or breach of this lease) in or about the Premises, during the term of this Lease; (ii) any act, omission or negligence of Tenant or any of its subtenants or licensees or its or their partners, directors, officers, agents, employees, invitees, or contractors; (iii) any accident, injury or damage whatever (even if caused by Landlord's negligence) occurring in, at or upon

the Premises; and (iv) any breach or default by Tenant in the full and prompt payment and performance of Tenant's obligations under this Lease; together with all costs, expenses and liabilities incurred or in connection with each such claim or action or proceeding brought thereon, including, without limitation, all attorneys' fees and expenses. If any case or any action or proceeding is brought against Landlord or any superior lessor or superior mortgagee or its or their partners, directors, officers, agents or employees and such claim is a claim for which Tenant is obligated to indemnify Landlord pursuant to this Section 28, Tenant upon notice from Landlord or such superior lessor or superior mortgagee, shall resist and defend such action or proceeding (by counsel reasonably satisfactory to Landlord). The obligation of Tenant under this Section 28 shall survive the termination of this Lease."

27. The Storage Lease also contains an agreement of indemnity between the parties.

28. Despite demand, Psygenics has failed and/or refused to meet its obligations under both the Property Lease and Storage Lease, including its obligation to indemnify and hold Plaintiff harmless, and in so doing has proximately caused College Park to suffer damages in an amount exceeding $75,000.

29. Plaintiff has taken and continues to take reasonable steps to mitigate its damages but, to date, has been unable to mitigate its damages in full.

## COUNT I – BREACH OF PROPERTY LEASE

30. College Park adopts and incorporates by reference all of its previous allegations as if fully set forth herein.

31. The Property Lease constitutes a valid, binding, and enforceable contract between the parties under Michigan law.

32. The Property Lease also constitutes a valid, binding, and enforceable contract of indemnity between the parties.

33. Psygenics has materially breached its obligations under the Property Lease, including but not limited to by failing to pay amounts due thereunder (including past due and ongoing CAM balances), abandoning the leased premises, breaching its obligation of good faith and fair dealing, and failing to indemnify and hold Plaintiff harmless.

34. Defendant's material breaches have caused Plaintiff to suffer damages exceeding $75,000.00, exclusive of interest, costs, and attorney fees.

WHEREFORE, College Park respectfully requests judgment against the Defendant in an amount exceeding $75,000.00, together with interest, costs, and attorney fees.

## COUNT II – BREACH OF STORAGE LEASE

35. College Park adopts and incorporates by reference all of its previous allegations as if fully set forth herein.

36. The Storage Lease constitutes a valid, binding, and enforceable contract between the parties under Michigan law.

37. The Storage Lease also constitutes a valid, binding, and enforceable contract of indemnity between the parties.

38. Psygenics has materially breached its obligations under the Storage Lease, including but not limited to by failing to pay amounts due thereunder, abandoning the leased premises, breaching its obligation of good faith and fair dealing, and failing to indemnify and hold Plaintiff harmless.

39. Defendant's material breaches have caused Plaintiff to suffer damages exceeding $75,000.00, exclusive of interest, costs, and attorney fees.

WHEREFORE, College Park respectfully requests judgment against the Defendant in an amount exceeding $75,000.00, together with interest, costs, and attorney fees.

Respectfully Submitted,

MADDIN HAUSER ROTH & HELLER PC

*/s/ Andrew M. Creal* _____
Matthew Mitchell (P69810)
Andrew M. Creal (P83806)
*Attorneys for Plaintiff*
One Towne Square, Fifth Floor
Southfield, MI 48076
(248) 354-4030
mmitchell@maddinhauser.com
Dated:  November 1, 2024          acreal@maddinhauser.com